Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| IDALIA DEL CARMEN RULLÁN FERNÁNDEZ<br><br>Peticionaria<br><br><br>v.<br><br><br>ALBERTO III RULLÁN FERNÁNDEZ, CARLOS ALBERTO RULLÁN FERNÁNDEZ, DAISY FERNÁNDEZ RIVERA<br><br>Recurridos | KLCE202500272 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Utuado<br><br>Caso número: UT2018CV00292<br><br>Sobre: Liquidación de comunidad hereditaria |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

Aldebol Mora, Juez Ponente

# RESOLUCIÓN

En San Juan, Puerto Rico, a 30 de abril de 2025.

Comparece la parte peticionaria, Idalia del Carmen Rullán Fernández, mediante el recurso de epígrafe y nos solicita que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Utuado, el 25 de noviembre de 2024, notificada al día siguiente. Mediante el referido dictamen, el foro primario declaró que el negocio Garaje Rullán, Inc., así como los frutos, rentas y/o intereses generados en dicha actividad comercial, eran bienes gananciales.

Por los fundamentos que expondremos a continuación, se deniega la expedición del auto solicitado.

**I**

El 21 de diciembre de 2018, Idalia del Carmen Rullán Fernández (peticionaria) incoó una *Demanda*, posteriormente

Número Identificador

RES2025 _____

enmendada,[1] sobre liquidación de comunidad hereditaria en contra de Alberto III Rullán Fernández, Carlos Alberto Rullán Fernández y Daisy Fernández Rivera (recurridos).[2] Indicó que las partes componían la comunidad de bienes adquiridos por herencia del causante Alberto Rullán Mayol y Joaquina Bayrón Rodríguez. Arguyó que no deseaba permanecer en dicha comunidad, por lo que interesaba que se liquidara la herencia correspondiente. Además, argumentó que únicamente interesaba que se liquidaran y adjudicaran los bienes de la comunidad hereditaria recibidos de su abuelo Alberto Rullán Mayol y su abuela Joaquina Bayrón Rodríguez. En virtud de ello, solicitó que se llevara a cabo un inventario, tasación y avalúo de todos los bienes de la referida comunidad, así como la partición y adjudicación de esta.

Por su parte, el 9 de abril de 2019, Alberto III Rullán Fernández y Carlos Alberto Rullán Fernández presentaron su alegación responsiva.[3] En esencia, negaron las alegaciones en su contra, pero coincidieron en que tampoco deseaban permanecer en la comunidad de bienes en cuestión. Según arguyeron, la peticionaria se beneficiaba exclusivamente de los bienes muebles e inmuebles pertenecientes a la comunidad, por lo que tenían derecho a créditos sobre estos. Alegaron que la peticionaria ocupaba y poseía uno de los inmuebles de la herencia, por lo que venía obligada a pagar renta por la participación de estos. Plantearon que procedía, además, un inventario y un avalúo exhaustivo de todos los activos y pasivos que formaban parte del caudal hereditario. Asimismo, instaron una *Reconvención* en la cual reiteraron sus planteamientos y argumentaron que existían deudas o pasivos que debían ser objeto de división.

---

[1] Entrada Núm. 18 del Caso Núm. UT2018CV00292 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] Apéndice XVIII del recurso, págs. 87-89.
[3] Entrada Núm. 20 del Caso Núm. UT2018CV00292 en el SUMAC.

En respuesta, el 24 de abril de 2019, la peticionaria contestó la *Reconvención*.[4] En síntesis, reiteró su solicitud de liquidación total de los bienes de la referida comunidad, los cuales incluían muebles, inmuebles, negocios en marcha y dinero en efectivo. Alegó que los recurridos habían mantenido el control y dominio de todos los bienes de la Sucesión de Alberto Miguel Rullán Bayrón desde el fallecimiento de este en el año 2005. Según adujo, los recurridos se beneficiaban exclusivamente de dichos bienes y la excluían a ella. Por ello, planteó que procedía un inventario y avalúo exhaustivo de todos los activos de la mencionada Sucesión, así como la adjudicación de aquellos créditos correspondientes.

Luego de varias incidencias procesales, el 16 de septiembre de 2024, se celebró una vista evidenciaria, a los únicos fines de determinar si el negocio Garaje y Gomera Rullán, Inc. era de carácter ganancial del matrimonio compuesto por Daisy Fernández Rivera y Alberto Miguel Rullán Bayrón.[5] Las partes comparecieron y presentaron prueba documental y testimonial. En lo atinente, la prueba testimonial constó de las declaraciones de Daisy Fernández Rivera, Jaime E. Rullán Bayrón, Carlos Alberto Rullán Fernández y Milagros Idalia Margarita Rullán Bayrón.

Evaluadas las posturas de las partes, el 25 de noviembre de 2024, notificada al día siguiente, el Tribunal de Primera Instancia emitió la *Resolución* que nos ocupa.[6] En particular, el foro primario desglosó las siguientes determinaciones de hechos:

1. La codemandada Daisy Fernández Rivera se casó el 13 de septiembre de 1962 con Don Alberto Miguel Rullán Bayrón[,] también conocido como "Tito".
2. La codemandada Daisy Fernández [Rivera] se desempañaba como maestra, pero una vez se casó con el causante Alberto Miguel Rullán Bayron dejó de trabajar como maestra.
3. Al momento de casarse[,] no otorgaron capitulaciones matrimoniales ni establecieron un régimen económico de

---

[4] Entrada Núm. 28 del Caso Núm. UT2018CV00292 en el SUMAC.
[5] Apéndice VIII del recurso, págs. 55-59.
[6] Apéndice I y II del recurso, págs. 1-11.

separación de bienes, por lo que comenzó a regir la sociedad de bienes gananciales.

4. El matrimonio Rullán-Fernández tuvo tres hijos: (1) Alberto, (2) Idalia y (3) Carlos Alberto, todos de apellidos Rullán Fernández.

5. Don Alberto Miguel Rullán Bayrón falleció estando casado con la codemandada Daisy Fernández Rivera el 4 de abril de 2005.

6. En el 1963 el señor Alberto Rullán Mayol hizo un acuerdo con su hijo Alberto Miguel Rullán Bayrón, luego de este último haberse casado con la codemandada Daisy Fernández Rivera, mediante el cual le cedió el negocio Garaje Rullán.

7. El Sr. Alberto Rullán Mayol y su hijo Alberto Miguel Rullán Bayrón, ya casado con la codemandada Daisy Fernández Rivera, acordaron que este último[,] como parte de la cesión del negocio Garaje Rullán[,] le pagaría un canon de arrendamiento por el terreno y el edificio donde ubica el negocio como condición para realizar dicha transacción.

8. El edificio del garaje ubica en el barrio Garzas del municipio de Adjuntas en un solar que pertenecía al Sr. Alberto Rullán Mayol, padre del causante Alberto Miguel Rullán Bayrón.

9. Además, la parte codemandada Daisy Fernández Rivera y el causante Alberto Miguel Rullán Bayrón[,] durante el matrimonio[,] adquirieron del Sr. Alberto Rullán Mayol mediante compraventa el negocio Adjuntas Bus Line, Inc., incluida la flota de vehículos de motor.

10. La codemandada Daisy Fernández Rivera junto con el causante Alberto Miguel Rullán Bayrón se hicieron cargo de la administración del negocio Garaje Rullán[,] a raíz de haber adquirido el mismo en el 1963.

11. Entre las tareas que realizaba la codemandada Daisy Fernández Rivera en el Garaje Rullán, Inc. se encuentran echar gasolina y la administración del negocio. Actualmente[,] la codemandada Daisy Fernández Rivera firma algunos cheques que se emiten.

12. El padre del causante Alberto Miguel Rullán Bayrón, don Alberto Rullán Mayol, falleció el 16 de diciembre de 1999 y su señora madre, doña Idalia Joaquina Bayrón Rodríguez[,] falleció el 7 de febrero de 1996.

13. Cuando fallece su esposo Alberto Miguel Rullán Bayrón el 4 de abril de 2005, la codemandada Daisy Fernández Rivera buscó ayuda de su hijo Carlos Rullán Fernández para administrar el negocio Garaje Rullán.

14. El causante Alberto Miguel Rullán Bayrón tenía tres hermanos: (1) Jaime Elías; (2) Carmen Iris, y (3) Milagros Idalia Margarita, todos de apellidos Rullán Bayrón.

15. Después del fallecimiento de Alberto Miguel Rullán Bayrón, ninguno de los hermanos de [e]ste fue a reclamar la administración del negocio Garaje Rullán porque conocían que dicho trámite le correspondía a la codemandada Daisy Fernández Rivera y a los hijos procreados con el causante Alberto Miguel Rullán Bayrón. Tampoco los hermanos del causante Alberto Miguel Rullán Bayrón reclamaron dinero o bienes del negocio Garaje Rullán, Inc. cuando se liquidó la herencia de Don Alberto Rullán Mayol. Esto[,] por considerar que no tenían derechos hereditarios sobre el negocio Garaje Rullán.

16. La codemandada Daisy Fernández Rivera reconoce que el terreno y los edificios (Garaje Rullán, Inc. y Centro de Inspección) donde dichas operaciones se llevan a cabo les pertenecen a sus hijos.

17. La codemandada Daisy Fernández Rivera[,] en algunas ocasiones[,] recibía menor cantidad de dinero en la declaración de dividendos del Garaje Rullán, Inc. (ya incorporado) porque fue una decisión de ella para atender las necesidades de sus hijos.

18. El señor Carlos Alberto Rullán Fernández, ha participado en toda la división de dividendos del Garaje Rullán, Inc. (ya incorporado) y declaró que[,] en los últimos cuatro (4) años[,] no se han repartido dividendos.

19. La declaración y el pago de dividendos del negocio Garaje Rullán, Inc. (ya incorporado) no obedecía a una fórmula específica, sino que la codemandada Daisy Fernández Rivera era quien decidía, pero debían dejar fondos suficientes para la compra de suplido de gasolina y pagar la nómina de los empleados.

20. El señor Jaime Elías Rullán Bayrón es hijo de Alberto Rullán Mayol e Idalia Joaquina Bayrón Rodríguez, es el menor de los cuatro (4) hermanos, trabajó toda la vida con su padre hasta que este falleció. El [t]ribunal no le otorgó credibilidad en términos del conocimiento del acuerdo entre su padre y su hermano, el causante Alberto Miguel Rullán Bayrón, debido a su edad al momento de llevarse a cabo el acuerdo en el 1963.

21. La señora Milagros Idalia Margarita Rullán Bayrón es conocida como Daly, es hija de Alberto Rullán Mayol e Idalia Joaquina Bayrón Rodríguez y[,] por consiguiente, hermana del causante Alberto Miguel Rullán Bayrón.

22. La señora Milagros Idalia Margarita Rullán Bayrón declaró y este [t]ribunal le adjudica credibilidad, que su padre comenzó el Garaje Rullán, pero que mientras su padre estuvo vivo, su hermano Alberto Miguel estuvo a cargo del garaje y pagó renta desde 1963 por concepto del uso del edificio por la suma de $300.00 mensuales, pero desconoce cuánto era la cantidad que se pagaba, si algo, por el terreno.

23. Al momento del causante Alberto Miguel Rullán Bayrón comenzar la administración y posesión del negocio Garaje Rullán estaba casado con la codemandada Daisy Fernández Rivera.

24. Las ganancias del negocio Garaje Rullán le pertenecía al causante Alberto Miguel Rullán Bayrón y a la codemandada Daisy Fernández Rivera una vez adquieren el mismo a partir del 1963.

25. En el 2008 las sucesiones de doña Idalia Joaquina Bayrón Rodríguez y de don Alberto Rullán Mayol comenzaron los procesos de partición de herencia y culminaron en el 2011 con la otorgación de la Escritura Número 3 sobre Segregación, Partición y Adjudicación de Bienes Hereditarios, Agrupación y Servidumbres otorgada el 13 de enero de 2011 ante el notario Félix A. Colón Miró.

26. En la Escritura Número 3 se adjudicó el inmueble descrito en el inciso K, donde está ubicada la estructura construida en cemento dedicada a gasolinera y estructura construida en zinc dedicada a almacén y taller, a la sucesión de Alberto Miguel Rullán Bayrón compuesta por Alberto III Rullán Fernández, Idalia del Carmen Rullán Fernández, Carlos Alberto Rullán Fernández en común pro indiviso y a Daisy Fernández Rivera en derecho usufructuario como viuda del causante. A dicho predio de terreno se le adjudicó un valor de doce mil dólares ($12,000.00).

27. El 11 de mayo de 2017 se otorgó la Escritura número 61 sobre Acta de Subsanación ante el notario Félix A. Colón Miró con el fin de subsanar la Escritura número 3 otorgada ante el mismo notario y hacer constar que la

participación de los bienes adjudicados en dicha escritura a Alberto III Rullán Fernández, Idalia del Carmen Rullán Fernández y Carlos Alberto Rullán Fernández es de 33.33% para cada uno, sin perjuicio del derecho usufructuario que le corresponde a la viuda Daisy Fernández Rivera.

28. El pago de arrendamiento por concepto del inmueble (terreno y edificio) se pagó hasta el 2011 cuando mediante escritura, previamente mencionada, se adjudicó el inmueble a la sucesión de Alberto Miguel Rullán Bayrón.

29. El Garaje Rullán, Inc. no forma parte de las sucesiones de doña Idalia Joaquina Bayrón Rodríguez y de don Alberto Rullán Mayol.

30. El Garaje Rullán, Inc. se incorporó antes de que falleciera el causante Alberto Miguel Rullán Bayrón por los codemandados Carlos Alberto Rullán Fernández, Alberto III Rullán Fernández y Daisy Fernández Rivera.

El foro *a quo* concluyó que el negocio Garaje Rullán, Inc., así como los frutos, rentas y/o intereses generados en dicha actividad comercial, eran bienes gananciales. Ello, hasta la extinción de la sociedad de bienes gananciales al fallecer el causante Alberto Miguel Rullán Bayrón y, luego, Daisy Fernández Rivera, quien participaba en la comunidad de bienes existente entre esta y sus hijos. Aclaró que lo anterior era sin perjuicio al derecho propietario del bien inmueble donde ubica el negocio en cuestión y el derecho usufructuario correspondiente a la viuda. En específico, el foro juzgador expresó lo siguiente:

> En el presente caso se encuentra en controversia la gananciabilidad del negocio Garaje Rullán, Inc. La codemandada Daisy Fernández Rivera se casó con el causante Alberto Miguel Rullán Bayrón el 13 de septiembre de 1962 sin otorgar capitulaciones matrimoniales[,] por lo que el régimen económico del matrimonio fue la sociedad de bienes gananciales. Nuestro Código Civil establece una presunción de que se reputan bienes gananciales los obtenidos por la industria, sueldo o trabajo de los cónyuges y los frutos, rentas o intereses que se devenguen durante el matrimonio procedentes de bienes gananciales o privativos. Art. 1303 del Código Civil, *supra.* También se consideran bienes gananciales los gastos útiles o mejoras a bienes privativos de los cónyuges que resulten de aportaciones de la sociedad legal de gananciales o de la industria o trabajo de alguno de los cónyuges. *Banco de Ahorro del Oeste v. Santos,* supra.

> No fue hasta unos meses después de casados, para el año 1963[,] que don Alberto Rullán Mayol, padre del causante Alberto Miguel Rullán Bayrón llegó a un acuerdo con este último para cederle la administración del negocio Garaje Rullán, Inc. con la condición de que

pagara una renta por la utilización de las estructuras y el terreno donde opera dicho negocio, pero sin que Rullán Mayol tuviera participación en las ganancias de este. La codemandada Daisy Fernández Rivera también participó en la administración de dicho negocio, en específico echando gasolina y supervisando las tareas. El causante Alberto Miguel Rullán Bayrón falleció en el 2005 estando casado con la codemandada Daisy Fernández Rivera.

El Garaje Rullán, Inc. se incorporó antes de que falleciera el causante Alberto Miguel Rullán Bayrón por los codemandados Carlos Alberto Rullán Fernández, Alberto III Rullán Fernández y Daisy Fernández Rivera. Al fallecer don Alberto Miguel Rullán Bayrón, doña Daisy Fernández Rivera requirió la ayuda de su hijo Carlos Alberto Rullán Fernández en la administración del Garaje Rullán, Inc.

La prueba testimonial y documental desfilada ante este Tribunal no rebatió la presunción de gananciabilidad que se le reputan a los bienes producto del sueldo, industria y trabajo de los cónyuges. Por tanto, el negocio Garaje Rullán, Inc., incluyendo los frutos, intereses y los gastos útiles o mejoras obtenidos y realizados producto de la administración del mismo, se consideran bienes gananciales porque son producto del trabajo y la industria perteneciente a ambos cónyuges, el causante Alberto Miguel Rullán Bayrón y la codemandada Daisy Fernández Rivera. Esto[,] independientemente de que el predio inmueble donde ubican sus operaciones no sea un bien ganancial.

En desacuerdo, el 11 de diciembre de 2024, la peticionaria presentó una *Moción en Solicitud de Reconsideración*,[7] a la cual Daisy Fernández Rivera se opuso el 2 de enero de 2025.[8] Atendidos los planteamientos de las partes, el 21 de febrero de 2025, el foro recurrido emitió y notificó una *Orden*, mediante la cual declaró No Ha Lugar la solicitud de reconsideración.[9]

Inconforme, el 18 de marzo de 2025, la parte peticionaria acudió ante nos mediante el recurso de epígrafe y realizó los siguientes señalamientos de error:

Erró el Honorable Tribunal de Primera Instancia de *Utuado al realizar las determinaciones de hecho 6: En el 1963 el señor Alberto Rullán Mayol hizo un acuerdo con su hijo Alberto Miguel Rullán Bayrón, luego de este último haberse casado con la codemandada Daisy Fernández Rivera, mediante el cual le cedió el negocio Garaje*

---

[7] Apéndice III del recurso, págs. 12-18.
[8] Apéndice XVII del recurso, págs. 80-86.
[9] Apéndice IV y V del recurso, págs. 19-20.

*Rullán*, y 7: *El Sr. Alberto Rullán Mayol y su hijo* Alberto *Miguel Rullán Bayrón, ya casado con la codemandada Daisy Fernández Rivera, acordaron que este último como parte de la cesión del negocio Garaje Rullán le pagaría un canon de arrendamiento por el terreno y el edificio donde ubica el negocio como condición para realizar dicha transacción,* a pesar de que las mismas están basadas en prueba de referencia y prueba de referencia múltiple, hecho que fue debidamente objetado durante la vista y dicha objeción declarada N[o] H[a] Lugar.

Erró el Honorable Tribunal de Primera Instancia de Utuado al determinar que el negocio Garaje Rullán fue adquirido por Alberto Miguel Rullán Bayrón mediante *CESIÓN*, por parte de su padre, y no resolver que el mismo es de carácter privativo.

Erró el Honorable Tribunal de Primera Instancia de Utuado al no tomar en consideración la forma y manera en que los recurridos realizaban la distribución de dividendos procedentes del Garaje Rullán, donde no se distribuían de conformidad a la alegada gananciabilidad, sino, que a la Sra. Daisy Fernández Rivera se le pagaba a razón del cómputo de la cuota viudal usufructuaria.

En cumplimiento con nuestra *Resolución* del 20 de marzo de 2025, y luego de una prórroga a esos efectos, la parte recurrida compareció mediante *Oposición a Certiorari* el 21 de abril del año corriente.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

[. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios a considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023); *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, funge como complemento a la Regla 52.1 de Procedimiento Civil, *supra*. *Torres González v. Zaragoza Meléndez,* supra. La precitada Regla dispone lo siguiente:

El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o

aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**B**

Sabido es que este Tribunal Apelativo actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Es por ello que, nuestra encomienda principal es examinar cómo los tribunales inferiores aplican el Derecho a los hechos particulares de cada caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el Tribunal de Primera Instancia desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó. *Íd.* Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que corresponde, primeramente, al foro de instancia. *Íd.* Como foro apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Íd.* Esa es la función de los tribunales de primera instancia. *Íd.*

Por el contrario, al momento de analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante declaraciones escritas, estamos en la misma posición que el Tribunal de Primera Instancia. *Ortiz et al. v. S.L.G. Meaux*, 156 DPR 488, 495 (2002). Así, "el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021), citando a *González Hernández v. González*

*Hernández,* 181 DPR 746, 777 (2011). Asimismo, es norma básica que las conclusiones de derecho son revisables en su totalidad por el foro apelativo. *Dávila Nieves v. Meléndez Marín,* supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los tribunales inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.,* pág. 771.

En nuestro ordenamiento jurídico no se favorece la intervención de los foros apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758 (2023); *Pueblo v. Hernández Doble*, 210 DPR 850 (2022); *Santiago Ortiz v. Real Legacy et al.*, supra. Ello, debido a que el foro de instancia está en mejor posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial. *Dávila Nieves v. Meléndez Marín*, supra, pág. 771.

En consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, cuando una parte peticionaria señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que esta ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario. Ello se logra utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. *Pueblo v. Pérez Delgado*, 211 DPR 654 (2023). Los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro primario. *Íd.*

Sobre ese particular, nuestro Tribunal Supremo ha reiterado que las disposiciones reglamentarias que gobiernan los recursos que se presentan ante el Tribunal de Apelaciones deben observarse rigurosamente. *Pueblo v. Pérez Delgado*, supra. Véase, *Hernández Maldonado v. Taco Maker*, 181 DPR 281 (2011). De esa manera, los abogados y las abogadas tienen la obligación de cumplir fielmente con el trámite prescrito en las leyes y en los reglamentos aplicables para el perfeccionamiento de los recursos. *Íd.* No puede quedar al arbitrio de la representación legal decidir qué disposiciones reglamentarias aplican y cuándo. *Íd.* Por tanto, **es tarea de la parte peticionaria presentar al foro revisor la prueba oral bajo la que se pretende impugnar las determinaciones del foro *a quo*.** *Íd.*

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

La parte peticionaria plantea en su primer señalamiento de error que el Tribunal de Primera Instancia incidió al realizar las determinaciones de hechos número 6 y 7, a pesar de que las mismas están basadas en prueba de referencia, lo cual fue debidamente objetado durante la vista. En su segundo señalamiento de error, sostiene que el foro primario erró al determinar que el negocio Garaje Rullán fue adquirido por Alberto Miguel Rullán Bayrón mediante cesión y no resolver que es de carácter privativo. Como tercer y último señalamiento de error, arguye que el foro *a quo* incidió al no tomar en consideración la forma en que los recurridos realizaban la distribución de dividendos procedentes del Garaje Rullán.

Luego de un examen sosegado del expediente ante nos, colegimos que no existe criterio jurídico que amerite nuestra intervención con lo resuelto por el Tribunal de Primera Instancia. Al entender sobre los planteamientos que la parte peticionaria propone ante este Foro, concluimos que la sala de origen no incurrió en error

de derecho ni en abuso de discreción al resolver que el negocio Garaje Rullán, Inc., así como los frutos, rentas y/o intereses generados en dicha actividad comercial, eran bienes gananciales, ello a fin de que podamos soslayar la norma de abstención judicial que, en dictámenes como el de autos, regula el ejercicio de nuestras funciones.

Al evaluar los documentos que obran en autos, concluimos que nuestra intervención no resulta oportuna. Siendo así, y **en ausencia de prueba que nos permita resolver en contrario, como una transcripción de la prueba oral para examinar los errores sobre apreciación de prueba**, denegamos expedir el auto de *certiorari* que nos ocupa, al amparo de lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra*, y la Regla 40 de nuestro Reglamento, *supra.*

**IV**

Por los fundamentos que anteceden, denegamos la expedición del recurso de *certiorari* solicitado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones